May it please the Court, Your Honor, I'm Dan Snyder and I represent the appellant Elena Mihailescu. Your Honor, am I being allotted 15 minutes today? Yes. I mistakenly assumed that I was getting 10. I would like to... Well, you don't have to use all of them. I would like to... Thank you, Your Honor. I would like to reserve five minutes, please, for my rebuttal argument. I'm going to focus on the first four assignments of error and will simply rely on the briefing on the fifth assignment of error. And I'd like to take those in order with the Court's permission. Concerning the first assignment of error, this concerns the age discrimination case. And the trial court found that the appellant had not created a triable issue of fact on pretext for age discrimination. And the Court may recall that there were three asserted reasons that this employer had for terminating the plaintiff appellant. The first one had to do with patient abuse, which the Court rejected. The second one had to do with insubordination that the Court rejected. And the third, which we are of concern with today, had to do with something called vaguely community relations. And the Court, on page 14 of its findings and recommendations, discussed this issue and said that it considered this to be a matter of circumstantial evidence for which it would require a specific kind of proof, specific and substantial evidence from the plaintiff in order to rebut the alleged nondiscriminatory reason. And what we raised in our brief is that under the current standard of the law, it doesn't make a lot of difference or doesn't make a lot of sense to the courts to distinguish between direct and circumstantial evidence. And we cited the Court to the Cornwell decision and also to the United States Supreme Court decision in – excuse me. We cited the Court to the United States Supreme Court decision in Desert Palace. And we also cited the Court to the Cornwell decision. What the – you know, whatever the Court decides to do on this issue, we think that it would be appropriate for the Court to treat both direct and circumstantial evidence the same way. But regardless of whether or not the Court finds that the plaintiff in this case was required to show substantial evidence in order to rebut the alleged nondiscriminatory reason, we believe, Your Honor, that we have presented that evidence. And specifically – Can you explain why that third reason should have been found not to satisfy the burden on the employer, that is to say the community relations? What was wrong with that as a justification? Okay. Of course, Your Honor. In this particular case, the factual basis, as is set forth in the briefing, is the first night that Mrs. Mielewski was back at work as a CNA on modified duty after filing her workers' compensation claim that there were some Romanian students who had been brought in from a community college or a technical institute to do some practice work in the nursing home. She chatted with them in Romanian. They were not able to get their blood pressure cuff to work. And so she went ahead and took the pressure for them. That's her story. That is what she contended, yes. There's no claim that anyone brought this alleged incident to her attention that night and said, Mrs. Mielewski, you did something wrong. She was not an educator. She was simply a CNA, a certified nursing assistant, which as the Court probably knows is the lowest level of health care provider that can work in a health care facility. The supervisor, Ms. Schoenbeck, did no investigation. She did not contact the nursing students. She simply relied upon a report from the instructor in the technical institute or community college that something had happened, that her students had been prevented from taking the blood pressure. But she says she was allowed to rely, or the opposing counsel brief says she was allowed to rely on that report. There was no legal obligation to do a reasonable investigation. I understand that, Your Honor. And what was interesting about that is that one of the criticisms that Judge Hubel had of Ms. Schoenbeck, the nursing supervisor, concerning the first and second allegations against my client, was in fact she had not done any investigation. And she may have been allowed to rely upon the hearsay, but it would have been reasonable for her to have asked Ms. Mielewski what happened before she prepared the letter of termination. The timing in this case is very important. Ms. Mielewski is back at work on her first night on modified duty. No one talks to her about this incident. She comes back to work the next day, and they already have a letter of termination prepared for her. Included in that letter of termination is a sentence from the supervisor that says, well, with regard to resident abuse, is this true? And so there's sort of an indication here that she's not really sure about what happened. Also, as we discussed in our brief, Schoenbeck made slightly inconsistent statements about this. When she testified at the unemployment hearing, she said that she heard that the students wanted to do vital signs, and the appellant said there were too many people in the room and that she would take over and take the vital signs. But at her deposition, Schoenbeck later claimed that she was told by the student's instructor that the instructor heard that the appellant had been rude to the students. The bottom line is, as my client said, she tried to talk to Ms. Schoenbeck about this, and Schoenbeck said, you know, you need to go get your things and leave. Schoenbeck later claimed that my client would not talk to her about it, but the inarguable fact is that she had already prepared the letter of termination and was in the process of terminating her. In other words, she never asked her for an explanation before she tried to terminate her. I have a variation on that question, still focusing on the so-called community relation. Yes, Your Honor. Assuming that Schoenbeck believed the stories that were unfavorable to your client, the question still would arise as to whether or not that is a sufficient basis for firing or whether it is a pretextual basis for firing. How long had your client worked at this facility? That was going to be my next point. She worked there for 16 years. There was no discipline that was ever applied to her, and she testified or stated also in her affidavit or declaration that was submitted that she always got favorable performance reviews. And she had had one earlier workers' comp claim for back. Now this is her second workers' comp claim, and she's now back at work for basically the first time following the filing of the workers' comp claim. And so the question is, even if Ms. Schoenbeck entirely believed that she'd been rude to the students, is saying that something that we need to say in those circumstances is a prima facie justification or pretextual? First of all, Your Honor, I want to just make sure that I'm always honest with the court. Sure. She had actually, I think, worked a couple nights after filing the claim on full duty, and this was her first night on modified duty where she says, I have to have a waiver. I think she files her second workers' comp claim on May 26th. And this was on? This is early June. Second. Yeah, yeah, okay. But the point we tried to make in our brief is that this was such a trivial event that but for the fact that. . . Pardon me, counsel. Yes, Your Honor. Does it make any difference whether it's trivial or not if it's an at-will relationship? I mean, if it were just cause, if it were a good cause, if it were a union contract, if this were a Teamster three-warning letter contract, that's something else. But here's an at-will contract, isn't it? As long as the at-will reason is not discriminatory, does the question of whether it's trivial come in at all except as to whether it's pretextual? Right. Well, I agree with the Court that employers are entitled to be mistaken about their employees. But in this particular. . . They can fire her because she doesn't part her hair on the right side, right? I agree. As long as they don't do it. If she's Asian, you know, if they do it, you think you look too Chinese, you know. But in this particular case, what we have is the timing of this very, very solid employee, and then she engages in this protective activity of filing a workers' compensation claim, and then ba-boom. So that goes to the question of pretext. Yes, Your Honor. And whether there's substantial evidence before the court as to pretext. Yes, Your Honor. In other words, if this employer lets, you know, routinely lets employees check in five minutes late and then someone files a workers' compensation claim and they check in five minutes late. . . Is there any evidence that this reporter, this employer, allowed other nurses to take over blood pressure duties and students and stop students from taking blood pressure? Regrettably, we do not have that evidence. I can tell you, Your Honor, my client was not a health educator. And. . . No, but that's not the question. To be pretext, it would show that in other cases, whether it wasn't Halescu, it wasn't Rouvanian, they had allowed students to take blood pressure tests or not allowed them and acted against nurses in a different way. We do not have a similar set of circumstances developed in the record, Your Honor. May I move on to the second assignment of error, Your Honor? Yes. Thank you. You're already into your reserve five minutes, but let's keep talking. As long as you've got something to say, let's keep going. The second assignment of error, Your Honor, I think is an important one, and that is what is the court to do when the court finds that two of the proffered reasons from the employer are incorrect? And is it to consider that to impeach a third reason? And the district court judge followed the analysis in Sims. And in Sims' decision, it says that the incorrectness of one decision may not impeach the credibility of the remaining articulated reasons. And we submit to the court that it should not follow that rule, that it would be better if the concurring opinion in the O'Dina decision was followed. And really, this is kind of consistent with what is pervasive throughout the law, and that is a witness false, in part, may be disbelieved in the entirety of his or her testimony. The third assignment of error has to do with the application. Did I cut you off, Your Honor? No. The third assignment of error has to do with the application of the McDonnell-Douglas standard to a state court decision. And what we touched upon in our brief is really Ms. Nealescu is not a member of a protected class. She's someone who's asserting a substantive right. So it's more like a FEMLA interference claim. She is in a protected class in one sense. That is to say, she's protected against firing because she's too old, and she's protected against firing because she has filed a workers' comp claim. Right. And what I was focusing on was the workers' comp issue. But what I was trying to point out is I'm not saying when you file a workers' compensation claim, you're not a member of a protected class. Just like when you assert your medical leave rights, you are, in a sense, a member of a protected class. But instead, what you're really doing is you're asserting substantive statutory rights, which is different than I'm a woman, I was born elsewhere, or my age. And what we think, Your Honor, is that there was some error made by the court in assuming that every claim under Oregon law that's brought in federal court must be subject to McDonnell-Douglas because clearly Oregon has a Family Leave Act called OFLA, which is often coupled with FEMLA. And in that case, there would not be a McDonnell-Douglas shifting. There hasn't been a case in Oregon that applied McDonnell-Douglas to this particular issue, right? Kagan.  Kagan. The court is correct. And I think the distinction we were trying to make is that the Oregon Rehabilitation Act couples with the ADA or the federal rights. And this is really sort of its own animal because there isn't any federal corollary. In Sneed, they said there was statutory language suggesting that you should apply McDonnell-Douglas Is there anything analogous for 6598.040? Not that I know of, Your Honor. I don't think that there's anything directly on point that would guide the court to apply McDonnell-Douglas to this. The last assignment of error has to do with wrongful termination. And there's been quite a bit of quibbling in this case as to whether or not my client told the employer that she was confused about these health and sanitation changes or whether she was being insistent. And clearly this employer described her as being insistent. The whole idea behind a wrongful termination claim is that there's not a specific statutory provision that says you can sue under this. So you have to look to other statutes. I'm sorry about the time. Don't worry. We're here to serve the public. Why don't we hear from the other side and then we'll give you a chance to respond. Thank you so much for listening to me. Good morning, Karen O'Casey, on behalf of the employer Maryville Nursing Home. With respect to the first assignment of error, putting aside the fact that the substantial and specific issue in Cornwell and how it intersects with Desert Palace v. Acosta was not talked about at all below, what the trial court did is simply say as to the first two reasons, there's enough evidence to create a question of fact as to whether those were pretextual. And on the last reason, which was the community relations reason, the only argument that the plaintiff made below regarding why that was pretextual was the assertion that the testimony by Ms. Schoenbeck in her deposition was inconsistent with her testimony at the unemployment hearing. And it simply wasn't. And based on that, the judge said, this is all you have. That is not enough to create a question of fact as to whether that third reason was pretextual. Let me make sure I understand where you're going with this argument. Are you saying, then, that an argument that says, even if all of this is true, given the circumstances under which the firing took place, this is such a trivial reason that it doesn't appear plausible that that was the real reason? Is that argument foreclosed, are you saying, because it wasn't raised in that form? I'm trying to figure out where you're going with your argument. Where I'm going with my argument is the first assignment of error, basically, the plaintiff wants you to reverse the judge's decision on the age discrimination case because the plaintiff wants you to find that there was, in fact, pretext as to that third reason. Of course. Okay. And the argument that there was pretext, but that there was a triable issue of fact as to whether it was true fact. Correct. That there was enough evidence to create. And I'm putting, like I said, there's this specific and substantial issue. It's briefed. And, you know, the trial court obviously didn't have the opportunity to even address that argument because it wasn't raised. But let's assume that that's even the test. There isn't, and we throw out specific and substantial, whatever that means, for purposes of circumstantial evidence. There isn't any evidence that creates a material question of fact as to that third issue because the only, the argument about why it was pretextual made by the plaintiff below is Schoenbeck's testimony was different. Let me come back to my question then. Are you telling me then that we can't even entertain the argument on pretext as to the last reason that is, the argument being, even assuming that Ms. Schoenbeck entirely believed what she's saying, in the sense of entirely believed that the interaction between Ms. Mayalescu and the students was as she thought, nonetheless, there's no trial, there's a triable issue of fact as to whether or not that was the real reason for the termination. Are you saying that argument's not available to us at this point? Well, the plaintiff can argue it. All I'm saying is that there's simply, regardless of whether you apply specific and substantial standard or a nonspecific and substantial standard, which seem to be the focus of the argument the plaintiff made with respect to the first assignment of error, it doesn't matter because the only evidence that they offered on the issue of pretext as to the third reason was this inconsistency in her testimony. Well, I think we're talking past each other. Here's the argument, as I understand the argument they're making. She's a long-time employee. She's received regular raises, although the last one wasn't quite as much she would like to have had. Right. And she's fired shortly, very shortly after filing her second worker's comp claim. And after she's fired, she's replaced by much younger people. And the question then arises, given that record of employment up until that time, if the only reason for firing her is that there was some disagreement, there was some lack of community or relation sensitivity, however you want to characterize it, with some students on one occasion, and she's fired then almost immediately after firing her worker's comp claim, that seems such a trivial reason as to raise an inference that it wasn't the real reason. I understand your point. I mean, that's the argument. But, however, what the law says is because Oregon is an at-will employee, an employment state, whether it's trivial or not is... Oh, no, that can't be right. Of course she's an at-will employee. We understand that. But she also can't be fired for a wrong reason. And the question is not whether she's an at-will employee. The question is whether she was fired for a wrong reason. Because that's the question, we ask, okay, well, what was your reason? And if the reason given is, and here I'm not asking you to concede it, if the reason given is so trivial as to be unbelievable that that is the real reason, well, they violated either the worker's comp retaliation or they violated the age discrimination statute, even though in the absence of a worker's comp retaliation claim or in the absence of an age discrimination claim, that would be a fully sufficient reason. Just as Judge Baez says, of course, parts are here on the wrong side. But assuming there's no underlying worker's comp claim or age claim, you can fire her for blue eyes. Well, even if she had filed a worker's compensation claim, which she did, I guess what I'm... From the employer's perspective, at least from Ms. Schoenbeck's perspective, the community relations issue was not trivial. It mattered to her. Well, that's what she says. Because she got a report from her charge nurse that Ms. Brownstein, the teacher, wasn't able to teach her students because of Ms. Michalewski's interference. The question in front of us is, is that reason potentially viewed as so trivial that a jury would be within its rights to hold that they didn't believe that that was the true reason? No. And that is the question in front of us. No. No, that's not the question in front of us? No, no, I mean, I think it's... What's the motive? I think the question is, irrespective of triviality and any analysis about triviality, is the plaintiff, once we articulate these legitimate nondiscriminatory reasons under McDonnell-Douglas, the plaintiff's obligation is, and the Court found you set forth your legitimate nondiscriminatory reasons, so the burden shifts to you, plaintiff, now is to prove pretext. The plaintiff didn't argue below that, well, it's so trivial that that proves pretext. The plaintiff argued below the reason that it's pretextual is because Ms. Schoenbeck's testimony in between her deposition and her unemployment hearing was different, so therefore it's pretextual. May I ask you this? Do you think that the Ninth Circuit Court of Appeal is in the business of weighing the credibility as to whether this was so trivial as to be not realistic? No, not at all. And that wasn't argued as to any of the reasons for the discharge at the trial court level. Let me come at it a slightly different way, if I'm understanding Judge Fletcher's point, that there are other things that could create a genuine issue of material fact regarding whether there was discrimination. We don't even have to say whether it was pretext or not because the issue ultimately is did she create a genuine issue of material fact about discrimination, wrongly motivated firing. And so one of them is the temporal relationship between her filing the workers' comp claim and her termination. Another one that I think Judge Fletcher raised, another one is the reason given a third one was she was replaced by two 20-year-old CNAs or nurse students, whatever it was. Did the Mrs. Mihalescu, I'm sorry, I know I'm mispronouncing her name. Did the appellate, did she raise those three reasons below to create her genuine issue of material fact? Your question intersects prima facie case with pretext. So let me just, I'm going to take one at a time. As to the replacement, I'll go backwards. Your first point, replacement by younger employees. That has to do with the prima facie case. So first part of McDonnell-Douglas is, is she a member of the protected class? Was an adverse employment action taken? In an age discrimination claim, which is the first assignment of error, was she or he replaced by a younger individual? That's part of the prima facie case. The plaintiff proved a prima facie case at summary judgment. The burden then shifted to the employer to say, here's the reasons why she was let go. And we did that. And once that happens, the burden then shifts back to the employee to prove pretext. The fact that a younger person replaced the plaintiff was not argued as pretext because, frankly, it doesn't have to be. It fits in the first part, the prima facie case. With respect to the second point, that it happened shortly after she filed her workers' compensation claim, that was argued in terms of the workers' compensation claim as part of that case. It was not argued as part of the age discrimination claim because it doesn't apply to that. And as to the triviality, which was your second one, that was not argued at all. So what the point that I was simply trying to make with respect to the age discrimination claim is, which then carried over to the judge's analysis on pretext on the workers' compensation claim, was simply that their argument about why it was pretextual, why the community relations reason for discharge was pretextual, was because Schoenbeck told two different stories. And she didn't. And so my point is, irrespective of whether the court wants to say Cornwell requires not specific or substantial or it doesn't, it doesn't matter because the basis for their pretextual argument below on the third reason simply doesn't create any material question of fact that the real reason was because of age or the real reason was because of the workers' compensation claim being filed. Now, that comes back to my very first question. I think you're telling us that the argument that I put forward as a possible argument for her is off the table because not made before the district court? Yes. We see all the time, as it were, sort of truncated or inartful arguments in the trial court that get better on appeal. And to find waiver of an argument is pretty hard. With respect to the second assignment of error, which has to do with the O'Dyma case and the decision by the trial court that because pretext was not proved as to the third reason, that was sufficient to allow the granting of summary judgment. The plaintiff is actually asking you to change the law. O'Dyma makes it very clear that if there are different reasons, there has to be a different analysis as to each reason. Okay. Now that I finally understand what you're saying, you're saying the argument is simply unavailable. Assume for purposes of this question that the argument is available. My question to you now is why is it so clear that it can be decided on summary judgment that the reason that Ms. Schoenbeck gave, that's community relations, was the true reason? Why is it so clear that no jury could reasonably find otherwise? It's not that. It's kind of the reverse, at least from my perspective when you're looking at the judge's decision on summary judgment. It's not that it's so clear that she was correct. It's that there's no... Not so clear that that was her true reason. Because there's no evidence that undercuts that that was not her true reason. Well, there's plenty of evidence. There's some evidence. I shouldn't say plenty. There's some evidence that undercuts that. Here we are, a long-term employee, no difficult up until this time, regular raises, and bingo, right after she files her second worker's comp claim, she's out the door. I mean, that's evidence on the other side. The question is how strong is it? I understand that. Right. But assuming we're at the third level, the third step in McDonnell-Douglas, which is where we got to with the trial court, is once the burden shifts the third step pretext to the plaintiff, the plaintiff has to come up with some evidence that really calls that into question. Yeah. But then the question is, okay, she's now advanced a facially neutral reason, and then the question is, does the jury believe it? That's where we are. Actually, on the pretext level, no, you're not quite there yet, because then what happens is once we set forth the neutral reason, then the burden shifts. This is only at summary judgment stage. Right. The burden shifts to the plaintiff. Now show some evidence that that's a false reason. Right. It's not my burden. It's not the employer's burden. I just gave you the evidence. It's the true reason. I just gave you the evidence. And that is to say long, uninterrupted service, regular raises, files her second worker's comp claim, she's out the door, replaced by two under 20-year-olds. That's the evidence that goes in on the other side. That's not the argument the plaintiff made with respect to the third reason, though. Well, you know. That's the problem. But the premise for the question I just asked you is assume that that argument is available. What's your answer? Why is the jury not entitled to conclude based on that? Not that it has to conclude one way or the other, but why is the jury not entitled to conclude, you know, we just don't believe that reason because it doesn't seem to us important enough to merit this decision under these circumstances. Because whether it's important enough is not a criteria. The jury wouldn't be instructed on that. It's not available because Ms. Schoenbeck testified as to the third reason. I got complaints about her behavior. I can fire her for that. I'm entitled to do that. And that's why I did it. And there's other than. And if the jury says, you know, that's what she says, but I don't believe that that was her true reason. The jury can't conclude that? No, that's not enough to create a question of fact to get to a jury. There's case law on that. Disbelief of the employer's reason in and of itself is absolutely insufficient to create a question of fact. And I would be happy to provide the court with case law on that.      I'm delighted to be here. I didn't realize that that was not argued either below or in the briefs, unless there are any other questions. Thank you. Your Honor, it appears that most of the Court's questions have concerned the first assignment for error. So to the extent that the plaintiff did not articulate this well or the appellant did not articulate this well, I would suggest to the Court that because it is plain error, the Court can consider it at this time. And the third thing is, I would agree that we did not use the word --" What is plain error? The plain error rule. No, no, I understand the plain error rule, but what do you claim is the plain error here which need not be preserved? A trivial argument? Excuse me, Your Honor. I got thrown off. I apologize. No, the plain error concerns the circumstantial evidence issue. The circumstantial evidence need not be specific and substantial? Yes. So do you agree that in arguments below, I don't know if you were the trial counsel at that point. I was. Okay. So in arguments below, did you argue to the Court that a pretext could be shown by these other elements, the temporal relationship between the workers' comp, et cetera? We did. Yes, we did. I think what I was focusing upon is there wasn't a lot of discussion below between the direct evidence and circumstantial evidence nature of these claims. And so that's what I was focusing on. One of the things I'd like to say is that when we went into the summary judgment motion, there were three legs to the employer's table. And so at that point, the issue of patient abuse, we had insubordination, and then we had this community relations. And the community relations was lumped in with everything else. We knocked out two of those legs of the table. So that's why the community relations issues seems more trivial now than before. The other thing to correct what counsel is saying is we did not limit our argument to saying that Ms. Schoenbeck had made inconsistent statements in various at various times under oath. We presented the Court with my client's version of what occurred, and that appears on Excerpt of Record 124, 125, in which she talks about the fact exactly what she did, her interrelationship with these students, that she wasn't rude to them, that she didn't try and prevent them from doing their job, that their blood pressure cuff didn't work, and no one talked to her about this. And the next day, she shows up at work, and she's being fired. Anything else, Your Honor? Thank you for your help. I thank both sides for your argument. The case of Mary Lesko v. Maryville Nursing Home is now submitted for decision. That concludes the oral argument calendar for this morning. We are adjourned until tomorrow morning.
judges: Fletcher W. , Bea, Ikuta